# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHRISTIAN CONGREGATION OF JEHOVAH'S WITNESSES,** | : CIVIL ACTION NO. |
| Plaintiff, | : |
| v. | : **JURY TRIAL DEMANDED** |
| **THE TOWNSHIP OF GLOUCESTER** | : |
| Defendant. | : |

## COMPLAINT

Plaintiff, the Christian Congregation of Jehovah's Witnesses ("CCJW"), by its undersigned counsel, hereby brings this Complaint against Defendant, the Township of Gloucester ("Gloucester Township"), and alleges the following:

## NATURE OF THE ACTION

1. This is an action for, *inter alia*, declaratory relief pursuant to the Declaratory Judgment Act, Article I of the Fourteenth Amendment to the United States Constitution, and various provisions of the Constitution and laws of New Jersey.

2. CCJW is a not-for-profit and tax-exempt entity organized to arrange for and hold assemblies for religious worship, assist congregations and groups of Jehovah's Witnesses to obtain buildings for religious worship, support congregations of Jehovah's Witnesses in the United States, and assist Jehovah's Witnesses to distribute Bibles and Bible-based literature. CCJW also provides humanitarian assistance to individuals suffering from natural and man-made disasters.

3. CCJW owns the real property known as the Turnersville Assembly Hall of Jehovah's Witnesses (hereinafter, the "Turnersville Assembly Hall"), located at 300 Sovereign Way, Blackwood, New Jersey that has been declared exempt from local real estate taxes pursuant to the Constitution of New Jersey and New Jersey statutes.

1

4. The Turnersville Assembly Hall serves as an integral place of worship and assemblage for religious purposes for southern New Jersey and the greater Philadelphia communities of Jehovah's Witnesses and other interested persons.

5. For over twenty-five years, CCJW and its predecessors have voluntarily made contribution payments to Gloucester Township pursuant to an Agreement (the "PILOT Agreement"). Initially, CCJW's predecessors extended contribution payments to Gloucester Township as a gesture to help ease and transition the loss of property tax and potential tax revenue from the construction of the Turnersville Assembly Hall. However, the PILOT Agreement was ambiguous as to duration, and Defendant has dramatically increased the required contribution payments over the years to exorbitant amounts that CCJW must re-direct from its charitable aims.

6. Instead of working with CCJW to resolve its concerns, Gloucester Township has chosen to use the PILOT Agreement as a sword by engaging in a series of discriminatory acts and practices designed to coerce CCJW to remain bound by the PILOT Agreement or else be subject to a challenge of their tax-exempt status.

7. CCJW now brings these claims to affirm its rights as a nonprofit religious tax-exempt organization.

## PARTIES

8. CCJW is a New York, not-for-profit, tax-exempt corporation with its principal place of business located at 675 Red Mills Road, Wallkill, New York 12589.

9. Defendant, Gloucester Township, is a municipality of the State of New Jersey with its principal place of business located at 1261 Chews Landing-Clementon Road, Laurel Springs, New Jersey 08021.

## JURISDICTION AND VENUE

10. The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) over this action because the amount in controversy exceeds $75,000, and the parties are all citizens of different states.

11. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 over this action because the claims arise under the Fourteenth Amendment to the Constitution of the United States and present substantial federal questions.

12. This Court has supplemental jurisdiction over CCJW's state law claims arising under the New Jersey Constitution and New Jersey State law pursuant to 28 U.S.C. § 1338(b), because those claims are joined with substantial and related claims under federal law. This Court also has subject matter jurisdiction over those claims pursuant to 28 U.S.C. § 1367, because CCJW's claims are interrelated with its federal claims and arise from a common nucleus of operative facts such that the adjudication of its state law claims with its federal claims furthers the interest of judicial economy.

13. Jurisdiction of this Court is also invoked pursuant to the Declaratory Judgment Act (28 U.S.C. § 2201).

14. Venue is proper in this District pursuant to 28 U.S.C. § 3191(b)(2), as a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

### I. History of the Turnersville Assembly Hall

15. At a meeting on April 11, 1993, the Gloucester Township Planning Board unanimously approved a Resolution memorializing final major subdivision approval and preliminary major site plan approval for the Turnersville Assembly Hall of Jehovah's Witnesses

of Southern New Jersey, Inc. ("JWSNJ"), a nonprofit religious and tax-exempt entity under Section 501(c)(3) of the Internal Revenue Code.

16. No zoning changes were required or granted to JWSNJ, nor were any permit variances granted at the April 11, 1993 Township meeting. Rather, JWSNJ agreed to make all modifications to the site plan as recommended by the Board Planner, the Board Engineer, the Traffic Officer, the Fire Official, and the County Planning Board.

17. JWSNJ volunteered to make contribution payments in lieu of local property taxes that would have been generated had the facility been subject to local taxation. JWSNJ volunteered these contribution payments as a gesture to help ease and transition the loss of property tax and potential tax revenue.

18. On August 12, 1993, a deed transferring title of the property from Mimosa Development to the JWSNJ was executed and thereafter recorded on August 25, 1993.

19. Beginning in 1999, quarterly contribution payments in the approximate amount of $30,000 were made by JWSNJ to Gloucester Township without any annual increases.

## II. The PILOT Agreement

20. On March 15, 1999, JWSNJ and Defendant formalized the PILOT Agreement after the development of the Turnersville Assembly Hall was substantially completed.

21. Township Mayor Sandra Love executed the PILOT Agreement on behalf of Defendant. A true and correct copy of the PILOT Agreement is attached as **Exhibit 1**.

22. The PILOT Agreement acknowledged JWSNJ was a "tax-exempt religious entity, and [the] real property owned by [JWSNJ] and used for religious purposes would ordinarily be exempt from real estate taxes." **Ex. 1** at p.1.

23. Under the Pilot Agreement, JWSNJ volunteered to "make a contribution in lieu of local purpose taxes that would have been generated if the Property (as developed) had been subject to local taxation." **Ex. 1** at p.1.

24. According to the PILOT Agreement, Gloucester Township's Tax Assessor would determine "the value which would have been established as the assessed value, as if the [Turnersville Assembly Hall] (as developed) [had] been subject to real estate taxes" determined by the "usual and normal" methods for evaluating property taxes. **Ex. 1** at ¶ 3.

25. JWSNJ and its predecessors would make these contributions payment "[f]or each year that the [Turnersville Assembly Hall] is exempt from real property taxes." **Ex. 1** at ¶ 3.

26. Gloucester Township agreed that it would not seek to assess or levy any real estate taxes or other payments in lieu of taxes, other than the contribution payment, so long as the PILOT Agreement remained in effect. **Ex. 1** at ¶¶ 5-6.

27. The PILOT Agreement did not provide an end date at which JWSNJ could stop making contribution payments to Gloucester Township, nor does it have an express provision that provides for cancellation. **Ex 1** at ¶ 5.

28. On March 13, 2000, the Township Council adopted a Resolution authorizing the execution of a PILOT Agreement. *See* **Exhibit 2**.

29. The Resolution explicitly stated that JWSNJ "is a tax exempt entity and real property owned and used for religious purposes." **Ex. 2**.

### III. Defendant's Predatory and Discriminatory Activities

30. On August 21, 2000, the State of New York issued a Certificate of Incorporation to CCJW, and it was considered a tax-exempt religious nonprofit pursuant to Section 501(c)(3) of the Internal Revenue Code.

5

31. On June 27, 2008, JWSNJ transferred title to Jehovah's Witnesses Assembly Halls of New Jersey, Inc. ("JWAH").

32. Each year that the PILOT Agreement was in place, Gloucester Township increased the contribution payments. For example, in 2000, the payments were $30,172 a year. By 2010, the payments had ballooned to $79,640 a year.

33. Starting in November 2010, CCJW's predecessor sent letters and made numerous attempts to meet with Gloucester Township to modify or end the PILOT Agreement because of the exorbitant contribution payments, but Gloucester Township has been unwilling to discuss the PILOT Agreement.

34. In 2019, Council President Orlando Mercado and the Council members heard CCJW's request to eliminate the PILOT Agreement. CCJW presented evidence which included among other things that (1) CCJW is the only religious group in the Township subject to a PILOT Agreement; and (2) the immediate adjoining property to the north of the Assembly Hall was recently purchased by Camden County for a voter record storage facility and removed from Gloucester Township's tax roll.

35. CCJW invited Council President Orlando Mercado and the Council members to visit the CCJW in order to become more familiar with the property.

36. In response, on May 29, 2019, Council President Orlando Mercado, on behalf of Defendant, expressed that the Council had no interest in ending the PILOT Agreement and dismissed its request via email. *See* **Exhibit 3.**

37. On February 13, 2023, Gloucester Township's Treasurer's Office sent a letter to the "Property Owner" requiring $52,640 for the year in payments pursuant to the PILOT Agreement. The Treasurer's Office demanded that the "property tax bill" be paid (even though the contribution payments are being made *in lieu of tax payments*), and stated that the failure to keep

6

"property tax" payments current would void the PILOT Agreement. *See* **Exhibit 4**. By its own admission, Gloucester Township has characterized the contribution payments as property taxes. Indeed, CCJW must go onto Gloucester Township's tax portal in order to make these contributions.

38. On April 14, 2023, CCJW filed a Certificate of Merger with the State of New Jersey Department of Treasury thereby merging with JWAH and becoming the owner of Turnersville Assembly Hall, effective on April 27, 2023. *See* **Exhibit 5**.

39. On December 19, 2023, Gloucester Township sent a delinquent notice to CCJW regarding two payments due under the PILOT Agreement, stating CCJW "must pay ASAP or your abatement will be removed." According to the notices, the two contributory payments equaled $26,320. *See* **Exhibit 6**.

40. On March 21, 2024, Gloucester Township sent a letter to CCJW summarizing a "discussion" held by unnamed persons after CCJW sent a letter to Mayor David R. Mayer regarding the excessive contribution payments and its intention to no longer make payment under same.

41. Without explanation, Gloucester Township claimed that Turnersville Assembly Hall was not a church and subject to local property taxes, CCJW was in breach of the PILOT Agreement, and CCJW was in default for failure to make payments for two or three prior quarters, thereby making CCJW subject to a regular tax assessment under the laws of the State of New Jersey. *See* **Exhibit 7**.

42. On July 2, 2024, Gloucester Township sent a delinquency notice to CCJW, indicating that CCJW was in default of the PILOT Agreement for August and November 2023, and February and May 2024. Using the PILOT Agreement payments as a carrot, and larger payments as a stick, Gloucester Township threatened that "[o]nce the default [wa]s declared, the total taxes owed for 2023 would be $173,383 (plus interest and penalty to be assessed), Note, the

7

amount of regular tax due for the first and second quarter 2024 year is estimated at $86,691.50 (also, interest and penalty will be assessed)." *See* **Exhibit 8**.

43. Despite these threats, Gloucester Township's records continue to show "Turnersville Assembly Hall of Jehovah's Witnesses" as benefiting from an exemption under N.J.S.A. 54:4-3.6, with EPL Code 2310040 and "Property Class: 15D – Church/Charitable." *See* **Exhibit 9.**

44. Pursuant to N.J. Admin. Code § 18:12-2.2, which sets the property classifications and definitions in New Jersey for tax purposes, a Property Class 15D designation means "real property owned by religious and charitable organizations actually used in the work of those organizations." Similarly, the EPL Code designation for the Property is for a Church.

45. Upon information and belief, CCJW is the only house of worship within Gloucester Township that is subject to an arrangement of making contribution payments pursuant to a PILOT Agreement.

46. Since 1993, CCJW and its predecessors have paid more than $1.3 million in contribution payments to Gloucester Township pursuant to the PILOT Agreement.

47. Gloucester Township has increased the payments over the years exponentially. What first began as a manageable voluntary contribution has now led to exorbitant payments that take away from CCJW's charitable aims.

48. CCJW's continued contribution payments to Gloucester Township in accordance with the PILOT Agreement creates a significant hardship on CCJW as it consumes publicly donated funds for the upkeep of places of worship for Jehovah's Witnesses, humanitarian assistance to individuals suffering from natural and man-made disasters, and for CCJW's tax-exempt purposes.

**COUNT I - EQUAL PROTECTION**

49. CCJW hereby incorporates paragraphs 1 through 48 of this Complaint as though fully set forth herein.

50. The Equal Protection Clause of the Fourteenth Amendment to our Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1.

51. CCJW is a tax-exempt not-for-profit corporation, and the Turnersville Assembly Hall is a tax-exempt property.

52. The PILOT Agreement requires CCJW to make payments that are the equivalent of property taxes that would otherwise be due but for a statutory tax exemption. The PILOT Agreement contribution payments are even calculated by the Township Tax Assessor who determines the value which would have been established as the assessed value, "as if the Property (as developed) been subject to real estate taxes." *See* **Ex. 1** at ¶ 3. Gloucester Township has also conceded that the contribution payments are property taxes.

53. As a result of CCJW's unwillingness to continue to make payments pursuant to the PILOT Agreement, it is now subject to discriminatory and punitive treatment, in that Gloucester Township is threatening to challenge its tax-exempt status and threatening to impose exorbitant property taxes in the amount equivalent to a non-exempt entity using a property for ordinary purposes.

54. If Gloucester Township continues to ignore the tax-exempt status of CCJW and the Turnersville Assembly Hall, the tax payments required to be made would be substantial and, in some instances, in excess of $170,000 per year.

55. The tax payments would substantially diminish CCJW's ability to provide a place for religious worship and to implement its religious purposes nationwide, including to provide humanitarian assistance.

56. Defendant has intentionally treated CCJW differently than other religious groups within the Township. Upon information and belief, CCJW is the *only* house of worship within Gloucester Township that is subject to an arrangement of making contribution payments pursuant to a PILOT Agreement for a tax-exempt property.

57. Due to the discriminatory treatment being applied to CCJW as a result of its refusal to continue payments under the PILOT Agreement, CCJW is being denied equal protection of the laws in violation of the Fourteenth Amendment. Gloucester Township cannot hold CCJW hostage to a "contract" under threat of a tax sale.

58. Gloucester Township has not provided any valid reason why it is treating CCJW differently than other religious groups in the Township whose properties are tax-exempt, and its actions are not justified.

**WHEREFORE**, CCJW respectfully requests this Court issue an Order:

(a) Declaring unlawful and enjoining Gloucester Township's discrimination and punitive treatment against CCJW on the basis for CCJW's refusal to continue to make payments pursuant to the PILOT Agreement;

(b) Declaring unlawful and enjoining Gloucester Township's discriminatory or punitive treatment as a means of leveraging CCJW's agreement to continue to make payments under the PILOT Agreement;

(c) Awarding punitive damages to CCJW for Gloucester Township's discriminatory and punitive treatment; and

(d) Awarding CCJW its attorneys' fees, costs, and such other and further relief as the Court may deem just and proper.

## COUNT II - DUE PROCESS VIOLATION

59. CCJW hereby incorporates paragraphs 1 through 58 of this Complaint as though fully set forth herein.

60. The power to determine which property in New Jersey is subject to taxation and which is exempt is vested exclusively with the General Assembly.

61. No legal authority exists in New Jersey to allow Gloucester Township to contractually levy taxes on a religious exempt property, or to otherwise negotiate contracts for payments "in lieu of taxes."

62. The Fourteenth Amendment to the United States Constitution provides in relevant part that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV, § 1.

63. Following CCJW's refusal to make payments pursuant to the PILOT Agreement, CCJW is now being subjected to discriminatory and punitive treatment with respect to the tax-exempt status of the Turnersville Assembly Hall.

64. CCJW has been harmed and is immediately threatened with harm as a direct result of Gloucester Township's actions to tax it as if it was a taxable entity.

65. Due to the discriminatory and punitive treatment being applied to CCJW, it is being deprived of or immediately threatened with being deprived of property and other valuable rights without due process of law in violation of the Fourteenth Amendment because CCJW is being:

(a) Coerced into making payments under the PILOT Agreement that are the equivalent of property taxes, notwithstanding the fact that the General

     Assembly has, by statute, exempted CCJW and the Turnersville Assembly Hall from such taxes;

(b)  Coerced into making payments pursuant to the PILOT Agreement and thereby having property confiscated according to a process that is clearly unlawful;

(c)  Subjected to or threatened with challenges to its tax-exempt status if it persists in refusing to make payments pursuant to the PILOT Agreement;

(d)  Forced to defend the exempt status of the Turnersville Assembly Hall property solely because of its refusal to make payments under the PILOT Agreement; and

(e)  Threatened with further punitive and discriminatory treatment if it persists in refusing to make payments under the PILOT Agreement.

**WHEREFORE**, CCJW respectfully requests this Court issue an Order:

(a)  Declaring unlawful and enjoining Gloucester Township's discrimination against CCJW on the basis of its refusal to make payments pursuant to the PILOT Agreement;

(b)  Declaring unlawful and enjoining Gloucester Township's discriminatory or punitive treatment in exchange for CCJW's agreement to continue to make payments under the PILOT Agreement;

(c)  Awarding punitive damages to CCJW for Gloucester Township's discriminatory and punitive treatment; and

(d)  Awarding CCJW its attorneys' fees, costs, and such other and further relief as the Court may deem just and proper.

**COUNT III - NEW JERSEY CONSTITUTIONAL AND STATUTORY VIOLATIONS**

66. CCJW hereby incorporates paragraphs 1 through 65 of this Complaint as though fully set forth herein.

67. The Uniformity Clause of the New Jersey Constitution states that "[p]roperty in [New Jersey] shall be assessed for taxation under general laws and by uniform rules." N.J. Const. Art. VIII § 1, ¶ 1(a).

68. The Exemption Clause provides an "[e]xemption for taxation may be granted only by general laws.  Until otherwise provided by law all exemptions from taxation validly granted and now in existence shall be continued. Exemptions from taxation may be altered or repealed, **except those exempting real and personal property used exclusively for religious . . . purposes** . . . and owned by any corporation or association organized and conducted exclusively for one or more of such purposes and not operating for profit."  N.J. Const. Art. VIII § 1 ¶ 2 (emphasis added).

69. N.J.S.A. 54:4-3.6 exempts from taxation "all buildings actually used for" specific enumerated purposes, including "the work of associations and corporations organized exclusively for religious purposes."

70. CCJW is exempt from paying property taxes for its ownership of the Turnersville Assembly Hall pursuant to N.J.S.A. 54:4-3.6.

71. The contributions called for under the PILOT Agreement are the equivalent of property taxes disguised under another name.

72. The PILOT Agreement that requires CCJW to make payments that are the equivalent of property taxes that would otherwise be due but for a statutory tax exemption violates Art. 8 § 1 ¶¶ 1-2 of the New Jersey Constitution ("Article 8") which only permits municipalities to impose taxes as authorized by law.

73. The Township will subject CCJW to regular tax assessment if it does not continue to make contributions pursuant to the PILOT Agreement.

74. As such the PILOT Agreement violates the New Jersey Constitution because it requires a tax-exempt entity to make payments for property taxes that are disguised as contribution payments pursuant to the PILOT Agreement.

**WHEREFORE**, CCJW respectfully requests this Court issue an Order that the PILOT Agreement violates Article 8 of the New Jersey Constitution and is therefore void, plus interest, attorneys' fees, costs, and such other and further relief as the Court may deem just and proper.

## COUNT IV - VOID CONTRACT

75. CCJW hereby incorporates paragraphs 1 through 74 of this Complaint as though fully set forth herein.

76. The PILOT Agreement between CCJW and Defendant is void and unenforceable because it lacks consideration.

77. CCJW has not received anything of value that would constitute consideration for making voluntary contributions payments pursuant to the PILOT Agreement.

78. Gloucester Township's only obligation under the PILOT Agreement was to calculate property value on a property entitled to exemption as if the property was subject to tax.

79. The PILOT Agreement between CCJW and Gloucester Township also violates public policy, thereby making it void.

80. The PILOT Agreement between CCJW and Gloucester Township violates public policy as it mandates contribution payments to be made by CCJW in perpetuity. These payments for property taxes are disguised as contribution payments pursuant to the PILOT Agreement.

81. The enforcement of the PILOT Agreement is injurious to the public interest and is detrimental to the common good; therefore, it cannot be sustained.

**WHEREFORE**, CCJW respectfully requests this Court issue an Order that the PILOT Agreement is void and payments pursuant to the PILOT Agreement are terminated, plus interest, attorneys' fees, costs, and such other and further relief as the Court may deem just and proper.

## COUNT V – REFORMATION (IN THE ALTERNATIVE TO COUNT IV)

82. CCJW hereby incorporates paragraphs 1 through 81 of this Complaint as though fully set forth herein.

83. Assuming the PILOT Agreement is not void, and that a valid contract exists between the parties, CCJW is entitled to reformation of the PILOT Agreement to conform with the parties' true expectations and intentions.

84. The PILOT Agreement was never intended to bind the parties in perpetuity.

85. The PILOT Agreement was not designed to permit Gloucester Township the ability to require unfettered contribution payments.

**WHEREFORE**, CCJW respectfully requests this Court enter judgment in favor of CCJW and against Gloucester Township, reforming the PILOT Agreement that represents the parties' true expectations and intentions, plus interest, attorneys' fees, costs, and such other and further relief as the Court may deem just and proper.

## COUNT VI – UNJUST ENRICHMENT

86. CCJW hereby incorporates paragraphs 1 through 85 of this Complaint as though fully set forth herein.

87. CCJW conferred substantial benefits on Gloucester Township via the PILOT Agreement and Gloucester Township knowingly and willingly accepted and enjoyed those benefits.

88. Gloucester Township either knew or should have known that the payments rendered by CCJW were made with the expectation that the contribution payments would not extend into perpetuity.

89. Gloucester Township's acceptance and retention of the contribution payments under the circumstances alleged herein make it inequitable for Gloucester Township to retain the benefits without conferring any benefit to CCJW.

90. CCJW is entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Gloucester Township, plus interest thereon.

91. As a result of Gloucester Township's conduct, CCJW has suffered and will continue to suffer damage.

**WHEREFORE**, CCJW respectfully requests this Court enter judgment in CCJW's favor and against Gloucester Township, in an amount to be determined at trial but in excess of $75,000.00, representing the amount wrongfully collected via the PILOT Agreement, plus interest, attorneys' fees, costs, and such other and further relief as the Court may deem just and proper.

## COUNT VII – MONIES HAD AND RECEIVED

92. CCJW hereby incorporates by reference the allegations contained in paragraphs 1 through 91 as if fully set forth herein.

93. CCJW made voluntary payments to Gloucester Township but had no practical alternative to the payments.

94. Gloucester Township has threatened CCJW that if it does not continue to make payments pursuant to the PILOT Agreement in perpetuity its entitlement to property tax exemption will be challenged in court.

95. CCJW disagreed and protested over the increase in payments over the years but there existed no non-judicial practical alternative but to concede and continue to make these payments.

96. Gloucester Township has in all respects practically compelled CCJW to make these payments.

97. CCJW is entitled to the monies Gloucester Township compelled it to make pursuant to the PILOT Agreement.

**WHEREFORE**, CCJW respectfully requests this Court enter judgment in CCJW's favor and against Gloucester Township, in an amount to be determined at trial but in excess of $75,000.00, representing the amount wrongfully collected via the PILOT Agreement, plus interest, attorneys' fees, costs, and such other and further relief as the Court may deem just and proper.

### COUNT VIII – DECLARATORY JUDGMENT

98. CCJW incorporates by reference the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

99. There exists an actual and concrete controversy between CCJW and Gloucester Township as to the parties' respective rights under the PILOT Agreement. *See* 28 U.S.C. § 2201.

100. The parties have an ongoing relationship, and adjudication by this Court of the parties' respective rights regarding the PILOT Agreement would resolve the dispute between the parties.

**WHEREFORE**, CCJW respectfully requests this Court enter judgment in CCJW's favor and against Gloucester Township pursuant to 28 U.S.C. § 2201, declaring that the PILOT Agreement is void as a matter of law, plus award CCJW attorneys' fees, costs, and such other and further relief as the Court may deem just and proper.

### COUNT IX – BREACH OF THE DOCTRINE OF FUNDAMENTAL FAIRNESS

101. CCJW incorporates by reference the allegations contained in paragraphs 1 through 100 as if fully set forth herein.

102. The doctrine of fundamental fairness in New Jersey serves to protect citizens against unjust and arbitrary governmental action.

103. The doctrine of fundamental fairness can both augment existing constitutional protections or exist as an independent source of protection against state action.

104. The fundamental fairness doctrine applies to prevent oppression, harassment, or egregious deprivation.

105. Gloucester Township has harassed CCJW, deprived CCJW of equal protection under the law, and disparately treated CCJW by forcing it to make payments in lieu of taxes, while not seeking such payments from any other religious institution in the Township.

106. Gloucester Township's conduct, including but not limited to its unlawful demands for payments from CCJW in lieu of taxes, threats of legal action against CCJW if payments were not made, and claims that such payments are to be made in perpetuity, was and continues to be unjust and arbitrary.

107. As a result, Gloucester Township has breached the doctrine of fundamental fairness.

**WHEREFORE**, CCJW respectfully requests this Court issue an Order:

(a) Declaring unlawful and enjoining Gloucester Township's discrimination against CCJW on the basis for its refusal to make payments pursuant to the PILOT Agreement;

(b) Declaring unlawful and enjoining Gloucester Township's discriminatory or punitive treatment in exchange for CCJW's agreement to continue to make payments under the PILOT Agreement;

(c) Awarding punitive damages to CCJW for Gloucester Township's discriminatory and punitive treatment; and

(d) Awarding CCJW its attorneys' fees, costs, and such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

CCJW hereby requests a jury trial on all issues raised in this Complaint.

**Respectfully submitted,**

**COHEN, SEGLIAS, PALLAS,
GREENHALL & FURMAN, P.C.**

BY: *(signature)*

**JOSEPH L. SINE, ESQ. (NJ 126722014)
DYLAN G. LAMORTE, ESQ. (NJ 303682020)**
1600 Market Street, 32nd Floor
Philadelphia, PA 19103
Phone: (215) 564-1700
Facsimile: (215) 564-3066
Email: jsine@cohenseglias.com
          dlamorte@cohenseglias.com

*Attorneys for Plaintiff,
Christian Congregation
Of Jehovah's Witnesses*

Date: February 25, 2025

9643583.4 60650-0001