UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**CHRISTIAN CONGREGATION OF
JEHOVAH'S WITNESSES**,

     *Plaintiff*,

    v.

**THE TOWNSHIP OF GLOUCESTER**,

     *Defendant*.

No. 25-cv-01459

**OPINION**

**APPEARANCES:**

**Dylan Lamorte**
**Joseph Sine**
COHEN SEGLIAS PALLAS GREENHALL & FURMAN
1600 Market Street
32nd Floor
Philadelphia, PA 19103

    *On behalf of Plaintiff.*

**Vincent P. Sarubbi**
**Christopher Terlingo**
**James Michael Graziano**
ARCHER AND GREINER
1025 Laurel Oak Road
Voorhees, NJ 08043

    *On behalf of Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on Defendant Township of Gloucester's ("Defendant" or "Township") Motion to Dismiss Plaintiff Christian Congregation of Jehovah's Witnesses' ("Plaintiff" or "CCJW") Amended Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6). (ECF No. 16). The Court heard oral argument on November 21, 2025. For the reasons that follow, Defendant's Motion is **GRANTED.**

## I.   FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint, (ECF No. 24), which the Court accepts as true for purposes of this motion.

CCJW is a non-profit religious organization that owns the Turnersville Assembly Hall ("Hall") of Jehovah's Witnesses in Blackwood, NJ. (*Id.* at ¶¶ 2–3). CCJW alleges that the property "has been declared tax-exempt from local real estate taxes pursuant to the Constitution of New Jersey and New Jersey statutes." (*Id.* at ¶ 3).[1] The Hall was developed by CCJW's predecessor, Jehovah's Witnesses of Southern New Jersey, Inc. ("JWSNJ") in the 1990s.[2] (*Id.* at ¶¶ 16–20). It serves as an integral place of worship and assemblage for religious purposes. (*Id.* at ¶ 4).

---

[1] It is unclear to the Court precisely what CCJW alleges in this paragraph of the Amended Complaint, as surely if there was a judicial or other binding determination as to the tax-exempt status of the property there would be no dispute between the parties. The Court presumes CCJW is merely characterizing the Township's prior treatment of the property as tax-exempt in its records and as declared in the PILOT Agreement, as discussed elsewhere in the Amended Complaint, as a de facto determination of the tax-exempt status of the property.

[2] In June 2008, title to the property was transferred from JWSNJ to Jehovah's Witnesses Assembly Halls of New Jersey, Inc. ("JWAH"). (*Id.* at ¶ 30.) In April 2023, CCJW merged with JWAH and became the owner of the property. (*Id.* at ¶ 37.)

During the development of the Hall, JWSNJ and the Township entered into a payment-in-lieu-of-taxes agreement ("PILOT Agreement" or "Agreement") on March 15, 1999. (*Id.* at ¶ 20; Ex. 1, ECF No. 24-1). The PILOT Agreement acknowledged that JWSNJ was a tax-exempt religious entity and that its property used for religious purposes would "ordinarily be exempt from real estate taxes." (Am. Compl., ECF No. 24 at ¶ 22). Nevertheless, JWSNJ agreed to make a "contribution in lieu of local purpose taxes that would have been generated if the Property (as developed) had been subject to local taxation." (*Id.* at ¶ 23). The Township's Tax Assessor would determine the value which "would have been established as the assessed value" had the Hall been subject to taxes using the "usual and normal methods for evaluating property taxes." (Ex. 1, ECF No. 24-1 at ¶ 2). JWSNJ agreed that it would make these contribution payments for each year that the Hall was exempt from real property taxes. (Am. Compl., ECF No. 24 at ¶ 24). The Township in turn agreed that it would not "seek to assess or levy any real estate taxes or other payments in lieu of taxes" while the Agreement was in effect. (*Id.* at ¶ 25). The Agreement did not include an express end date or termination provision; instead CCJW alleges the Township retained the unilateral right to cancel the Agreement by seeking to assess or levy real estate taxes. (*Id.* at ¶ 26). CCJW is the only religious entity that is subject to such an arrangement with the Township. (*Id.* at ¶ 50). It further alleges that the Township had no statutory authority to enter into the Agreement. (*Id.* at ¶¶ 48–49).

Since 1993, CCJW and its predecessors have paid more than $1.3 million under the Agreement. (*Id.* at ¶ 52). Over time, the Township increased the payments from about $30,000 annually in 2000 to about $80,000 by 2010. (*Id.* at ¶ 31). CCJW's predecessor repeatedly sought to modify or terminate the Agreement, but, in 2019, the Township refused to do so. (*Id.* at ¶¶ 32–

35). On February 13, 2023, the Township sent a letter demanding payment of $52,640 for the 2023 tax year under the Agreement. (*Id.* at ¶ 36; Ex. 4, ECF No. 24-4). On December 19, 2023, the Township sent a delinquency notice stating that CCJW "must pay ASAP or your abatement will be removed." (Am. Compl., ECF No. 24 at ¶ 38).

The Township then sent another delinquency letter on March 21, 2024, after CCJW sent a letter to the Mayor stating its intention to no longer make payments under the Agreement. (*Id.* at ¶ 39). The Township claimed that the Hall was not a church and that CCJW was in breach of the Agreement and in default for failure to make payments for two or three prior quarters, thereby making CCJW "subject to a regular tax assessment under the laws of the State of New Jersey." (*Id.* at ¶ 40).[3] On July 2, 2024, the Township sent a notice to CCJW advising that it was in default for nonpayment and "threatened" to impose full property taxes of $173,383 for 2023 and $86,691.50 for the first half of 2024, plus interest and penalties. (*Id.* at ¶ 42). The Township has publicly listed a delinquency and outstanding principal amount owed by CCJW in the amount of $26,320.00 on its website. (*Id.* at ¶ 45). However, the Township's records continue to show the Hall as benefitting from a tax exemption based on its status as "Church/Charitable." (*Id.* at ¶ 46).

CCJW asserts that the Township's efforts to "challenge its tax-exempt status" and impose "exorbitant and outstanding fees" amount to "discriminatory and punitive treatment." (*Id.* at ¶ 61). It further asserts that the Township has intentionally discriminated against it on the basis of religion because it is the only religious entity subject to a PILOT Agreement and that other churches operate

---

[3] The attached exhibit indicates that the Township conducted a review of the "historical facts that resulted in the PILOT Agreement." (Ex. 7, ECF No. 24-7). That review determined that the Hall required zoning changes and that the "structure Improvement is not a church" thus making it "subject to local property taxation" in the absence of the PILOT Agreement. (*Id.*).

tax-exempt properties that are similar to the Hall in all relevant respects and are not subject to a PILOT Agreement. (*Id.* at ¶¶ 56, 62–67). CCJW claims that it has suffered harm as it has been forced to divert funds to make payments under the Agreement. (*Id.* at ¶ 43). It is also "immediately threatened with harm as a direct result" of the Township's "actions to tax it as if it was a taxable entity." (*Id.* at ¶ 74). At oral argument, CCJW confirmed that it has not made any payments under the Agreement for approximately two years. (Tr. at 15).

## II.    PROCEDURAL HISTORY

CCJW filed its Complaint on February 25, 2025. (ECF No. 1). The Township filed its Motion to Dismiss on April 30, 2025. (ECF No. 16). After briefing, the Court heard oral argument on November 21, 2025.[4]

After argument, the Court administratively terminated the Motion to Dismiss, granted CCJW leave to file an Amended Complaint, and ordered the parties to file supplemental briefing to more fully address: 1) whether the Court should abstain from deciding the case under the comity doctrine and 2) whether the claims are fully ripe for adjudication. (ECF Nos. 22–23). Thereafter, CCJW filed an Amended Complaint on December 22, 2025. (ECF No. 24). The Township filed a supplemental brief in support of its Motion to Dismiss on January 21, 2026. (ECF No. 25). CCJW

---

[4] CCJW initially argued that the Township waived its right to file a motion to dismiss because the Township agreed to file an answer to the Complaint in exchange for CCJW withdrawing its request for default. (ECF No. 18 at 38). But CCJW's request for default, (ECF No. 14), was premature and improper because, per the Court's judicial preferences, the Township had seven days from the Court's Order on April 23, 2025, finding that no pre-motion conference was required, (ECF No. 13), to file an answer or motion. (Def.'s Reply, ECF No. 19 at 13–14). The Township thus timely filed its motion to dismiss on April 30, 2025. (ECF No. 16).

filed a supplemental brief in opposition on February 20, 2026, (ECF No. 26), and the Township

replied on March 2, 2026, (ECF No. 27). The Township then requested that the Court reactivate

and decide its Motion as applied to the Amended Complaint and considering the supplemental

briefing. (ECF No. 29).

The Amended Complaint contains three counts under federal law: Equal Protection (Count

I) and Due Process (Count II) violations under the Fourteenth Amendment and a request for

declaratory judgment under 28 U.S.C. § 2201 (Count VII). (*Id.* at ¶¶ 55–75, 99–101). CCJW

further asserts state law claims based on diversity jurisdiction under 28 U.S.C. § 1332 and/or

supplemental jurisdiction pursuant to 28 U.S.C. § 1367, including contract claims seeking to void

and/or reform the PILOT Agreement (Counts III and IV), unjust enrichment (Count V), monies

had and received (Count VI) and a breach of New Jersey's doctrine of fundamental fairness (Count

VIII). (*Id.* at ¶¶ 76–98, 102–108).

CCJW asks the Court to declare that the Township's enforcement of the PILOT Agreement

violates its state and federal constitutional rights and that the Agreement is void. (*Id.* at ¶¶ 67, 75,

101, 108). On its state law contract claims, it seeks an order voiding the Agreement and terminating

its obligation to continue making payments under the Agreement. (*Id.* at ¶ 82). In the alternative,

it seeks reformation of the Agreement to conform to the parties' expectations. (*Id.* at ¶ 86). CCJW

also seeks restitution of amounts previously paid under the Agreement. (*Id.* at ¶¶ 91–92, 98).

### III.    <u>LEGAL STANDARDS</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) must be granted if the

Court lacks subject matter jurisdiction. *In re Schering Plough Corp. Intron/Temodar Consumer

Class Action*, 678 F.3d 235, 243 (3d Cir. 2012); *see also* FED. R. CIV. P. 12(h)(3). Indeed, "federal

courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quotation marks and citation omitted). A plaintiff bears the burden of establishing that the Court has subject matter jurisdiction. *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009).

Under Rule 12(b)(1), an attack on subject matter jurisdiction may be either a facial or a factual attack. *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008). Here, the Township's facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint." *Harrington v. Northfield Bd. of Educ.*, No. 21-04990, 2022 WL 844427, at *3 (D.N.J. Mar. 22, 2022) (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)). In a facial attack, "the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

## IV.    DISCUSSION

The Township moves to dismiss under Rule 12(b)(1) and 12(b)(6) and argues that this Court either lacks jurisdiction under the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, or should abstain under the doctrine of comity. It further argues that CCJW's claims are not ripe for adjudication. In the alternative, the Township argues that CCJW has failed to state a plausible claim for relief. (Def.'s Mot., ECF No. 16-1; Def.'s Supp. Br., ECF No. 25).

CCJW argues that the TIA's jurisdictional bar does not apply because this dispute is about a private contract, not taxes, and that this Court should also not abstain under the comity doctrine. It further argues that its claims are ripe for adjudication and plausible. (Pl.'s Opp., ECF No. 18;

Pl.'s Supp. Opp., ECF No. 26).

The Court agrees with Defendant that CCJW's claims are barred by the TIA and the doctrine of comity, which underlies and reinforces the TIA. (Def.'s Mot., ECF No. 16-1 at 18–23; Def.'s Supp. Br., ECF No. 25 at 10–17). Simply put, this Court is not the proper forum for this dispute. Because the Court will dismiss based on the TIA and comity, it need not separately reach the issue of whether CCJW's claims are ripe or Defendant's remaining 12(b)(6) arguments.

### A. The TIA and the Comity Doctrine Require Dismissal of This Case If New Jersey Courts Provide an Adequate Remedy

Under the TIA, "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." § 1341. The "principal purpose" of the TIA is "to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *California v. Grace Brethren Church*, 457 U.S. 393, 408–09 (1982) (quotation marks and citation omitted). The TIA "divests" a district court of jurisdiction to issue both declaratory and injunctive relief when doing so would "interfere[] with the assessment and collection of state taxes" and an "adequate" state remedy is available. *Id.* at 408–12.

The doctrine of comity "supplements" the TIA. *Hardwick v. Cuomo*, 891 F.2d 1097, 1104 (3d Cir. 1989). "More embracive than the TIA, the comity doctrine applicable in state taxation cases restrains federal courts from entertaining claims for relief that risk disrupting state tax administration." *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 417 (2010). Although non-jurisdictional, under the comity doctrine "federal courts refrain from interfer[ing] ... with the fiscal operations of the state governments ... in all cases where the Federal rights of the persons could otherwise be preserved unimpaired." *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 15 (2015) (alteration

in original) (quotation marks omitted) (quoting *Levin*, 560 U.S. at 422); *see also Freed v. Thomas*, 976 F.3d 729, 737 (6th Cir. 2020) ("[T]he principle of comity is a practice of abstention, and is not jurisdictional."). The doctrine is rooted in the "historical reluctance of the federal courts to interfere with the operation of state tax systems if the taxpayer had available an adequate remedy in the state courts." *Grace Brethren Church*, 457 U.S. at 412. Comity thus prevents federal courts from granting damages relief in cases related to state taxes. *Fair Assessment in Real Est. Ass'n, Inc. v. McNary*, 454 U.S. 100, 107 (1981); *Sipe v. Amerada Hess Corp.*, 689 F.2d 396, 403 (3d Cir. 1982). In short, "principles of federalism and comity generally counsel that courts should adopt a hands-off approach with respect to state tax administration." *Nat'l Priv. Truck Council, Inc. v. Oklahoma Tax Comm'n*, 515 U.S. 582, 586 (1995).[5]

With respect to the TIA, the Third Circuit has indicated that courts should take a broad view of what constitutes a "tax" within the meaning of the Act. *See Robinson Protective Alarm Co. v. City of Philadelphia,* 581 F.2d 371 (3d Cir. 1978). The *Robinson* court explained that what constitutes a "tax under state law" for purposes of the Act "should be determined as a matter of federal law by reference to congressional policies underlying the Tax Injunction Act." *Id.* at 374. The court further noted that Congress intended that the TIA "be uniformly applied, consistent with the principles of federalism, comity and non-interference with state fiscal affairs embodied in the Act" and that one of its aims was to prevent foreign corporations from being able to invoke federal

---

[5]  Comity has the same practical effect as the TIA and requires a district court to dismiss the case. *See Sipe*, 689 F.2d at 408 (holding that "the Tax Injunction Act and the related principle of comity precluded the district court from entertaining these actions" and remanding with instructions to dismiss for lack of jurisdiction). However, because comity is non-jurisdictional, it may be affirmatively waived. *See Direct Mktg. Ass'n v. Brohl*, 814 F.3d 1129, 1134 n.7 (10th Cir. 2016).

diversity jurisdiction to challenge state and local taxes. *Id.* at 375. Thus, in that case, the court found that a city ordinance was "a revenue raising measure collected annually in a manner similar to other gross receipts levies," and therefore a tax, notwithstanding the fact that the state court had characterized it as a "rental." *Id.* at 376.

The comity doctrine is broader still. Thus, even in cases where plaintiffs "artfully" plead around the "strictures" of the TIA by, for example, omitting requests for injunctive relief, courts in this District and others have invoked the comity doctrine to refrain from deciding cases that are essentially tax disputes. *Frybarger v. N.J. Dep't of Treasury*, No. 05-4648, 2006 WL 3827331, at *3 (D.N.J. Dec. 27, 2006); *see also Gussin v. Ely,* No. 08-3723, 2009 WL 5205993, at *3 (D.N.J. Dec. 29, 2009) ("Despite Plaintiff's efforts to avoid a direct challenge of the tax assessment, Plaintiff's claims arise solely from Defendants' alleged unlawful tax collection practices."); *Online Merchants Guild v. Hassell*, No. 21-369, 2021 WL 2184762, at *7 (M.D. Pa. May 28, 2021) (abstaining under the comity doctrine even though the case was not a "run-of-the-mine tax case" because the plaintiff's claims, when "[c]ulled to their essence," were "really about the Department's authority and intention to tax nonresident Guild members."). Taken together, the TIA and the comity doctrine instruct that "a broad swath of revenue-affecting statutes is protected as state tax administration in which federal courts should refrain from interfering." *Energy Transfer L.P. v. Ficara*, No. 22-3347, 2024 WL 2874363, at *2 (3d Cir. June 7, 2024) (quotation marks and footnote omitted).

The Third Circuit has indicated several factors a district court can weigh in deciding whether comity requires it to refrain from deciding a case, including whether:

> (1) the challenged law concerned "commercial matters over which" the state "enjoys wide regulatory latitude"; (2) the suit requires adjudicating "any

fundamental right or classification" to which heightened scrutiny applies; (3) the state courts are "better positioned than their federal counterparts to correct any violation" and provide a remedy; and (4) more than one potential remedy could adequately redress the alleged constitutional defect.

*Z & R Cab, LLC v. Phila. Parking Auth.*, 616 F. App'x 527, 531 n.8 (3d Cir. 2015) (citing *Levin,* 560 U.S. at 431–32). The *Levin* court also considered whether the plaintiffs were "seeking federal-court aid in an endeavor to improve their competitive position." 560 U.S. at 431. While Plaintiff suggests that a court's invocation of the comity doctrine requires a rigid application of these factors, (Pl.'s Supp. Br., ECF No. 26 at 7–22), the Third Circuit has disagreed and made clear that consideration of those factors, as applied to the facts of a particular case, is committed to a district court's discretion. *Z & R Cab*, 616 F. App'x at 531 n.8; *Remington Rand Corp.-Delaware v. Bus. Sys. Inc.*, 830 F.2d 1260, 1266 (3d Cir. 1987) ("Because the extension or denial of comity is discretionary, we review this issue by the abuse of discretion standard.").

Here, despite CCJW's efforts to evade the TIA and cast this dispute as a contractual and constitutional matter, its requested relief falls squarely within the purview of the TIA and the comity doctrine. CCJW asks this Court to declare that the Township's "enforcement of the PILOT Agreement violates [its] constitutional rights." (Am. Compl., ECF No. 24 at ¶ 75). But that "enforcement," and the "discriminatory and punitive treatment" it complains of, is being "[s]ubjected to or threatened with challenges to its tax-exempt status" and being "[f]orced to defend the exempt status" of the Hall. (*Id.*) Nomenclature aside, CCJW is plainly seeking declaratory relief to determine its alleged tax-exempt status under state law and prevent the Township from potentially taking action to challenge that status and assess, levy, or collect property taxes. That is precisely the type of relief the TIA precludes. *See Grace Brethren Church*,

457 U.S. at 408–12.

The fact that CCJW brings constitutional claims does not automatically vest jurisdiction with this Court. As an initial matter, nothing in the Amended Complaint plausibly alleges acts of religious discrimination. Beyond its conclusory allegations, the only fact CCJW pleads is that it is the only church subject to a PILOT Agreement. (Am. Compl., ECF No. 24 at ¶¶ 50, 56, 62–67). But CCJW does not allege that it was subject to duress or coerced into entering into the PILOT Agreement because of its religious status; rather, the Amended Complaint and attached exhibits plainly show that it voluntarily executed a contract decades ago, complied without complaint for years, and now finds continued compliance too financially onerous. The fact that other religious entities in the Township did not enter into similar agreements does not render the Township's conduct discriminatory. As the Township observes, CCJW's theory would effectively prevent municipalities from entering into any contractual relationship with a religious entity unless identical agreements were offered to every other religious organization. (Def.'s Mot., ECF No. 16-1 at 28 n.5). Such a proposition has no basis in law or logic. Even taking the allegations as true and drawing all reasonable inferences in CCJW's favor, none of the Township's actions or threatened actions implicate fundamental rights or suspect classifications.

Furthermore, the Supreme Court has already confronted (and declined federal jurisdiction over) similar cases involving constitutional challenges to state taxes, including by religious entities. *See Grace Brethren Church*, 457 U.S. 393; *Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503 (1981). In *Grace Brethren Church*, California churches and religious schools sought to challenge a state unemployment insurance tax under the Establishment and Free Exercise Clauses of the First Amendment. 457 U.S. at 396. The plaintiffs "sought to enjoin … the State from collecting both

tax information and the state tax." *Id.* at 398. The Court held that the TIA deprived federal courts of jurisdiction and declined to reach the First Amendment question because the plaintiff could seek recourse in the California courts. *See id.* at 418–19. Similarly, the Court held in *Rosewell* that the federal courts had no jurisdiction over the plaintiff's claim for injunctive relief under the Equal Protection and Due Process Clauses of the Fourteenth Amendment because the Illinois courts provided an adequate remedy. *See* 450 U.S. at 510–11, 528.

CCJW relies on *Hibbs v. Winn*, 542 U.S. 88 (2004), a case in which the Supreme Court allowed a constitutional challenge to state tax credits. (Pl.'s Opp., ECF No. 18 at 16–17). But *Hibbs* is readily distinguishable. There, the Court explained that the TIA has generally been understood to bar suits by state taxpayers seeking to avoid their own tax liability but not suits brought by third parties challenging the constitutionality of tax benefits afforded to others. *Hibbs*, 542 U.S. at 108; *see also Levin*, 560 U.S. at 430 (noting that the plaintiffs in *Hibbs* were third parties "whose own tax liability was not a relevant factor"). The Court emphasized that the TIA applies in "cases in which state taxpayers seek federal-court orders enabling them to avoid paying state taxes." *Hibbs*, 542 U.S. at 107. That is precisely the case here. This case does not involve a third-party challenge to a tax benefit; rather, CCJW's claims directly implicate its own tax liability and it effectively asks this Court to declare that it is tax-exempt and that it need not pay property taxes going forward. Accordingly, *Hibbs* is inapposite, and the TIA's jurisdictional bar applies.

Plaintiff's reliance on *Brohl* is similarly unpersuasive. (Pl.'s Opp., ECF No. 18 at 16) (citing *Brohl*, 575 U.S. at 15). In that case, the Court held that claims involving notice and reporting requirements related to a state tax were not subject to the TIA's jurisdictional bar. 575 U.S. at 8. But the Court explicitly declined to reach the question of whether the comity doctrine would

independently bar a federal court from entertaining such a suit. *Id.* at 15. Here, CCJW is seeking to challenge its own potential tax liability, not a notice and reporting requirement, and the TIA controls. As explained below, the comity doctrine also requires dismissal.

CCJW further argues that the TIA is inapplicable because the payments made under the PILOT Agreement are not taxes, but contractual payments. (Pl.'s Opp., ECF No. 18 at 14–15). However, CCJW conceded at oral argument that it has not made any payments under the Agreement for more than two years. (Tr. at 15). Thus, CCJW is not really asking this Court for relief from its contractual obligations; rather, it seeks a court order shielding it from the potential future consequences of its repudiation, i.e., the Township's efforts to assess and collect property taxes in the absence of payment under the PILOT Agreement. As explained above, this relief is barred by the TIA.

Finally, to the extent CCJW seeks only to "void" the PILOT Agreement and does not seek declaratory relief regarding the Township's future tax collection efforts, the comity doctrine would still counsel against exercising jurisdiction. While this case is certainly not a "run-of-the-mine tax case," because CCJW's claims, when "[c]ulled to their essence," are "really about the [Township's] authority and intention to tax" it, this Court should abstain under the comity doctrine. *Hassell*, 2021 WL 2184762, at *7.

14

CCJW argues that the Court should not abstain under the comity doctrine because this case does not involve a challenge to a state tax scheme but rather the validity of a single, privately negotiated contract between a municipality and a non-profit religious entity. (Pl.'s Supp. Opp., ECF No. 26 at 7–22). According to CCJW, the factors identified in *Levin* weigh against abstention because the case implicates fundamental constitutional rights, including equal protection and religious discrimination; CCJW is not engaged in commercial activity seeking to improve any competitive position in a marketplace; and this Court is better positioned than the state courts to adjudicate this matter.[6] (*Id.*) The Court is not persuaded. As an initial matter, as explained above, the *Levin* factors are not rigidly applied but are instead to be considered by a district court in exercising its discretion to abstain under comity. Additionally, there are no plausible allegations of religious discrimination in the Amended Complaint, only bare conclusory allegations. In any event, such discrimination claims, even if plausibly pled, do not automatically convey federal jurisdiction when a plaintiff's claims implicate its own tax liability.[7] Indeed, federal challenges to

---

[6] CCJW also makes a passing suggestion that the Township waived the issue of comity by only asking the Court to dismiss under the TIA in its moving brief. (Pl.'s Supp. Opp., ECF No. 26 at 22). Although it emphasized the TIA, the Township's initial briefing explicitly invoked the doctrine of comity and argued for dismissal on that basis. (Def.'s Mot., ECF No. 16-1 at 18–23) (arguing that the Complaint should be dismissed for lack of jurisdiction due to the TIA "as well as longstanding principles of comity and federalism"). Indeed, courts almost uniformly analyze the TIA and comity in tandem. Moreover, the Court ordered supplemental briefing on the issue so CCJW cannot argue that it has been prejudiced.

[7] CCJW also suggests that the Supreme Court created an Establishment Clause exception to the comity doctrine in a footnote in *Hibbs*. (Pl.'s Supp. Opp., ECF No. 26 at 15). Not so. Indeed, the Supreme Court clarified in *Levin* that it "did not deploy the footnote to recast the comity doctrine; it intended the note to convey only that the Establishment Clause-grounded case cleared both the TIA and comity hurdles." 560 U.S. at 430. That is because the plaintiffs in *Hibbs* were "third parties whose own tax liability was not a relevant factor." *Id.* (quotation marks omitted). As explained above, that is not the case here.

state taxes will invariably sound in equal protection and due process.  State courts are eminently capable of adjudicating such federal constitutional claims. Finally, as explained below, this Court could not resolve Plaintiff's claims without becoming entangled in questions concerning the administration of New Jersey's tax laws which the state courts are better positioned to adjudicate. In sum, the fact that CCJW is a non-profit entity is not dispositive, and a consideration of the *Levin* factors and the principles underlying the comity doctrine weigh in favor of dismissal.

Consider CCJW's claim that the PILOT Agreement is void for lack of consideration. (Am. Compl., ECF No. 24 at ¶ 77). The thrust of its argument is that, because it is a tax-exempt religious entity, it received nothing of value in exchange for entering into the Agreement, as it would not have been subject to taxation in any event. But Defendant correctly observes that tax-exempt religious entities may still be subject to taxation under New Jersey law if their property is used for non-exempt—that is, non-religious—purposes. (Def.'s Supp. Br., ECF No. 25 at 18 n.6 (citing N.J. STAT. ANN. § 54:4-3.6)). So, the apparent benefit to CCJW was that the Township agreed not to pursue an inquiry into the Hall's activities and whether the Hall qualified for tax-exempt status. (*Id*.). Indeed, the exhibits attached to the Amended Complaint reinforce this point. After CCJW ceased making payments under the PILOT Agreement, the Township revisited the "historical facts that resulted in the PILOT Agreement" and concluded that the property would have required zoning changes and that the Hall, as developed, did not qualify as a church for tax-exemption purposes. (Ex. 7, ECF No. 24-7).

Resolving the issue of consideration would therefore require the Court to determine whether the Hall would have qualified for tax-exempt status at the time the Agreement was executed and whether it continues to qualify today. Such determinations would necessarily require

this Court to opine on the scope of New Jersey's tax exemption for religious property and thus implicate the Township's authority to assess and collect property taxes. That type of inquiry is precisely the sort of intrusion into state tax administration that the TIA and the comity doctrine seeks to avoid.

The remaining contract theories raise similar concerns. CCJW also contends that the PILOT Agreement is void because the Township lacked statutory authority to enter into such an agreement with a church. (Am. Compl., ECF No. 24 at ¶ 81). It further alleges that the Agreement violates public policy because it "mandates payments to be made by CCJW in perpetuity" while permitting only the Township to terminate it.[8] (*Id.* at ¶ 80). Though CCJW acknowledges that New Jersey law expressly permits municipalities to enter into PILOT agreements with certain entities, it asserts that there is no similar authority to enter into such an agreement with a church. (*Id.* at ¶ 48 (collecting statutes)). For example, New Jersey law authorizes municipalities to enter into PILOT agreements with "urban renewal" entities for the development of housing projects, allowing the municipality to collect a specified percentage of the revenue from those projects in lieu of taxes for up to fifty years. N.J. STAT. ANN. § 40A:20-12[9]; *see also id.* § 52:27D-320 (authorizing PILOT Agreements for housing projects funded by the New Jersey Affordable Housing Trust Fund).

---

[8] Although the Agreement does not contain an express termination provision, the Court notes that it appears mutually terminable in that CCJW could stop making contribution payments at any time, but doing so would make it potentially subject to property taxes. (*See* Ex. 1, ECF No. 24-1 at ¶¶ 5–6). Indeed, that is what happened here.

[9] This statute was first enacted in 1991 and was in effect at the time CCJW and the Township executed the PILOT Agreement in 1999.

The Court acknowledges that the state statutes authorizing PILOT agreements do not appear to contemplate agreements with entities like CCJW, and the Township has not indicated what statutory or other authority it relied on to enter into the Agreement. But even if the Township acted *ultra vires*, adjudicating these claims would require this Court to wade into nuanced and complicated tax matters, including the extent of a municipality's authority under New Jersey law to enter into PILOT agreements with religious entities and the permissible structure and duration of such arrangements. These are questions that bear directly on the State's system of local taxation and revenue administration. Their resolution would have broader implications for the State's taxing authority, including the ability of municipalities to structure similar agreements relating to tax-exempt property, and adjudicating this case thus "risk[s] disrupting state tax administration." *Levin*, 560 U.S. at 417; *see also Reagle v. Elliott,* 80 F. App'x 737, 738 (3d Cir. 2003) ("[W]e note that questions raised by the plaintiff about the interpretation of the New Jersey statute and the efficacy of the procedures to carry it out are particularly the province of state, rather than federal, courts.").

Furthermore, any effort by this Court to fashion remedies would invariably require determining state tax liability. For instance, CCJW seeks to recoup all of its payments under the PILOT Agreement under a theory of unjust enrichment. (Am. Compl., ECF No. 24 at ¶¶ 87–92). But if this Court agreed and ordered disgorgement, the Township would almost certainly demand an offset for the unpaid property taxes during that time. Thus, this Court would again be required to make determinations in the first instance of the Hall's tax-exempt status and CCJW's tax liability in contravention of the TIA and the comity doctrine. Indeed, the "limitations on the remedial competence of lower federal courts counsel that they refrain from taking up cases of this

18

genre, so long as state courts are equipped fairly to adjudicate them." *Levin*, 560 U.S. at 428.

In sum, where, as here, resolving Plaintiff's claims would require the Court to address issues so closely tied to the administration of state tax law, the comity doctrine counsels restraint when the courts of New Jersey are fully capable of adjudicating these state-law issues alongside Plaintiff's federal constitutional claims. As explained below, this Court finds New Jersey courts are indeed capable of doing so.

### B.  New Jersey Courts Provide CCJW a Plain, Speedy, and Efficient Remedy

Under the TIA and the comity doctrine, federal courts should refrain from hearing cases that risk interfering with state taxation if the state provides "a plain, speedy and efficient remedy" in its courts. *E.g.*, *Gass v. County of Allegheny*, 371 F.3d 134, 137 (3d Cir. 2004). This is a modest threshold; it means that "a state court must meet certain minimal *procedural* criteria[,] but it [does] not require that the state's remedy be the best, most convenient, or speediest one." *Id.* (quotation marks and citation omitted).

Despite CCJW's arguments to the contrary, New Jersey courts provide a "plain, speedy, and efficient remedy." (*See* Pl.'s Opp., ECF No. 18 at 17–18; Pl.'s Supp. Opp., ECF No. 26 at 18–19). Indeed, the Third Circuit and other courts in this District have already addressed this precise question and found that New Jersey courts provide an adequate remedy. *See, e.g.*, *Sipe*, 689 F.2d at 407 (holding that New Jersey courts provided a "plain, speedy, and efficient" remedy for the plaintiff's claims under federal law); *Reagle*, 80 F. App'x at 738 (holding that "New Jersey law provides judicial process and adequate remedies through appeal to its Tax Court, and from there to the Appellate Division of its Superior Court"); *Beach Creek Marina v. Royal Tax Lien Servs., LLC*, No. 09-2649, 2010 WL 2674457, at *3 (D.N.J. June 30, 2010) (citing *Gen. Motors Corp. v.*

*City of Linden,* 671 A.2d 560 (N.J. 1996)) (same); *Frybarger*, 2006 WL 3827331, at *3–4 (same). And the New Jersey Supreme Court has specifically noted that "the Tax Court could correct an unconstitutional assessment." *Gen. Motors Corp.*, 671 A.2d at 566 (citing cases); *see also Hibbs*, 542 U.S. at 113 (Kennedy, J., dissenting) ("The concern, it seems, is that state courts are second rate constitutional arbiters, unequal to their federal counterparts. State courts are due more respect than this.").

CCJW's effort to distinguish *General Motors* is unpersuasive and belied by its own Amended Complaint. CCJW argues that the plaintiff in *General Motors* "directly challenged a property tax assessment" whereas here, "CCJW is not challenging an assessment that could be appealed, it is challenging discrimination occurring outside any formal tax proceeding." (Pl.'s Supp. Opp., ECF No. 26 at 19; Pl.'s Opp., ECF No. 18 at 18). But the Amended Complaint alleges that the Township has already identified the precise amount CCJW would owe in property taxes in the absence of the PILOT Agreement: $173,383 for 2023 and $86,691.50 for the first half of 2024 plus interest and penalties. (ECF No. 24 at ¶ 42). As the Supreme Court has explained, an "assessment" is a "recording of the amount the taxpayer owes the Government." *Hibbs*, 542 U.S. at 100 (quotation marks and citation omitted). Thus, according to the allegations of the Complaint, the Township has made a property tax assessment, and CCJW is free to challenge its constitutionality in the New Jersey Tax Court. Moreover, CCJW has not explained why these claims could not be heard in New Jersey Superior Court, if not the Tax Court. Because New Jersey state courts are more than capable of adjudicating all the claims CCJW brings here, this Court is not the appropriate forum for this dispute.

## V.    CONCLUSION

For the foregoing reasons, the Court either lacks jurisdiction pursuant to the TIA or exercises its discretion to abstain from interfering with a matter of state fiscal administration under the comity doctrine because an adequate state remedy exists. Accordingly, Defendant's Motion to Dismiss, (ECF No. 16), is **GRANTED** and Plaintiff's Amended Complaint, (ECF No. 24), is **DISMISSED WITHOUT PREJUDICE**. An appropriate Order accompanies this Opinion.

**CHRISTINE P. O'HEARN**
**United States District Judge**